312 So.2d 369 (1975)
John L. ROWELL, Plaintiff-Appellee,
v.
J. Rush WIMBERLY, III, Defendant-Appellant.
J. Rush WIMBERLY, III, Individually and as head and master of the community, and his wife, Virginia H. Wimberly, Plaintiffs-Appellee,
v.
John L. ROWELL, Defendant-Appellant.
Nos. 12600 and 12601.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1975.
*370 John B. Benton, Jr., Minden, for J. Rush Wimberly.
John S. Stephens, Coushatta, for John L. Rowell.
Before BOLIN, PRICE and HALL, JJ.
PRICE, Judge.
These consolidated cases arise out of an altercation occurring on Saturday evening, November 15, 1969, at the home of John L. Rowell near Ringgold in Bienville Parish. The participants who are the litigants in these suits are J. Rush Wimberly, III, his wife, Virginia H. Wimberly, and Rowell.
The undisputed facts which set the stage for this unfortunate happening are as follows:
John L. Rowell allowed Jimmy Lane Rowell and David Ann Rowell, his son and daughter-in-law, to park a mobile home in the front yard of his rural residence. Jimmy Lane Rowell and his wife had marital difficulties and David Ann called her close friend, Virginia Wimberly, to come pick her up during the afternoon of November 15th. Mrs. Rowell spent the afternoon with the Wimberlys and consulted Mr. Wimberly, who is an attorney, about filing a separation proceeding. After dining in Shreveport earlier that evening Mr. and Mrs. Wimberly drove Mrs. Rowell to the mobile home to pick up some of her personal belongings. Jimmy Lane Rowell was not at the trailer, and as Mrs. Rowell's key had been taken from her by her husband, she made a forced entry into the trailer. Wimberly followed her in to help carry her belongings. John L. Rowell came from his house some 50 feet distance from the trailer to investigate and a confrontation took place ultimately resulting in the shooting by Wimberly of Rowell in his right knee.
John L. Rowell filed an action against Wimberly for personal injuries, medical expenses and loss of wages resulting from the allegedly unjustified action of Wimberly in intentionally shooting him in the leg. *371 Wimberly, in answer to Rowell's action, denied his shooting of Rowell was without justification and alleged his action was necessary because of the threat of Rowell to commit serious bodily harm to him and his wife. Wimberly reconvened, seeking damages for damage to his professional reputation by the filing of the action by Rowell containing false and malicious allegations. No attempt was made to present evidence under the reconventional demand and it has apparently been abandoned.
Virginia Wimberly, joined by her husband as head and master of the community, filed suit against John L. Rowell for personal injury and related expenses allegedly sustained by the action of Rowell in striking Mrs. Wimberly on the right side of the head during this confrontation.
The two actions were consolidated and after trial on the merits the district judge awarded Rowell judgment against Wimberly for the sum of $4,000 for personal injuries; $2,350 for loss of wages, and $545.32 for medical expenses.
Virginia Wimberly was awarded judgment in her suit against Rowell for $750 for her personal injury, and her husband was awarded medical expenses paid on her behalf of $9.00.
From these judgments the defendants in each action have suspensively appealed.
Counsel for appellant, Wimberly, in his appeal from the judgment awarding Rowell damages, contend the trial judge was in error in failing to find the evidence presented established Wimberly was justified in believing he and his wife were in danger of receiving bodily harm at the time Wimberly fired the shot which struck Rowell in the leg. No complaint is made as to the amount of damages awarded. Nor has Rowell answered asking for an increase in the award.
The sole complaint advanced by Rowell as appellant in the companion suit is that the award of $750 to Mrs. Wimberly is excessive.
In reviewing the record to determine the correctness of the trial court's finding of liability in each of these cases we are confronted by conflicting testimony in regards to the events which transpired on the Rowell premises on the evening in question.
The testimony of Mrs. and Mrs. Wimberly given on trial seeks to show that after they arrived at the mobile home on the Rowell premises to assist David Ann Rowell to remove her belongings, the Wimberly automobile was parked with its lights burning and the motor running near the main entrance door to the mobile home. Mrs. Rowell procured a screw driver from a nearby tool shed and forced her way into the trailer. Wimberly followed her in and Mrs. Wimberly remained at the car. As Wimberly came out of the trailer with two suitcases he heard loud talking and saw John L. Rowell confronting his wife who was on the outside of the car on the driver's side. Both contend Rowell was using vile and profane language and demanding they get off his property. They contend he struck Mrs. Wimberly on the right side of her head with a blow from his left hand, knocking her against the car. Their testimony shows Mrs. Wimberly was in an advanced stage of pregnancy at this time. They further contend Rowell grabbed Wimberly by the collar or neck and pulled him to a point near his residence where two pickup trucks were parked. After talking a few minutes at this location, Wimberly contends he broke loose from Rowell and ran to the rear right hand side of his automobile where his wife was standing. They contend Mrs. Wimberly handed Wimberly a .45 caliber pistol she had removed from the glove compartment. They both testified Rowell had followed Wimberly to the car and was continuing toward him at about the same time that a nephew of Mr. Rowell, O. V. "Buster" Rowell, was walking toward Wimberly from the opposite side. They further contend Wimberly shot the pistol toward the ground and told Rowell this was a warning shot and that if he came any closer he *372 would be forced to shoot him; that he continued coming and at about a distance of four feet, Wimberly shot him in the right knee. They further testified that both Rowell and his nephew went into the house, and as Mr. and Mrs. Wimberly drove off a shotgun was fired at their automobile. Mr. and Mrs. Wimberly contend Rowell was intoxicated and precipitated the entire incident without any provocation.
The testimony of John L. Rowell is at variance with that of the Wimberlys in most respects. He contends he walked out of his residence with his nephew, Buster Rowell, and noticed a car parked near his son's trailer. He thought it was his son's automobile until he approached nearer the vehicle and saw the car was unfamiliar to him. He investigated and inquired why Wimberly was on his property. He contends Wimberly told him they had come to get David Ann Rowell's clothes and that he had a gun and they were prepared to do whatever was necessary to get what they came after and he had better get back in his house. Rowell contends Wimberly started for his car, and being fearful he was attempting to get the gun mentioned, pulled him away from the immediate vicinity of the car. Rowell contends he then released his hold on Wimberly's clothes and suggested they walk up to the house and call the sheriff's office. He testified Wimberly walked with him to a point by two pickup trucks which were parked near the residence, but that he would not go in the house. On seeing David Ann come out of the trailer, Rowell contends he asked her to go in and call the sheriff's office so that the matter could be settled according to law. He contends he and Wimberly discussed the matter peacefully for several minutes while David Ann made the phone call. Rowell further testified Wimberly had apparently gotten in a good humor and they had started back toward his automobile when Wimberly sped up his pace and stepped near the back of the car on the opposite side, where his wife was standing. Rowell testified Wimberly began struggling with his wife trying to take the gun away and yelling at her for not having shot Rowell. He further contends that after obtaining the gun Wimberly fired two shots, the first going past him and the second striking him in the knee.
Rowell offered the testimony of his nephew, Buster Rowell, and his daughter, Barbara Ann Rowell (Caskey), who allegedly saw and heard most of the episode to corroborate his own testimony.
The discovery deposition of David Ann Rowell was introduced as she was not available to testify at the time of trial on the merits. The deposition was given after a reconciliation had been effected with her husband, Jimmy Rowell, and they were living in the City of New Orleans. Her testimony in deposition is both corroborative and contradictory with portions of the testimony of either side of this affair.
The testimony of David Ann Rowell is to the effect that she came out of the trailer after hearing the loud voices. She heard Rowell demanding in abusive language that they leave the premises and saw him strike Mrs. Wimberly. She proceeded to go into the house to call the sheriff's department. After completing this mission in a period of several minutes, she came out and passed by Rowell and Wimberly, who were talking by the pickup trucks. Any physical encounter between the parties seemed to her to be over at this time. She thereupon proceeded to return to the trailer and continued packing. She next heard a shot and ran toward the door. She heard Wimberly tell Rowell that was a warning shot only and a second or two later the second shot was fired, which struck Rowell.
The trial judge grounded his conclusion of liability against Wimberly primarily on the following finding:
"Although J. Rush Wimberly III claims to have fired upon John L. Rowell in defense of himself and wife in the belief *373 that they were about to be attacked by Rowell, it appears that everyone involved, including David Ann Rowell, thought that the original fracas had ended in amicable agreement to transfer the hostilities to the courthouse. Ten to fifteen minutes elapsed between the original scuffle and the shooting and it appears from the evidence that the conduct of John L. Rowell in the interim was such that it should have convinced Wimberly that he and his wife were no longer in danger of receiving bodily harm. From this evidence, we have concluded that Wimberly was motivated by anger rather than fear and that his apparent willingness to negotiate the difficulties was only a suberfuge to allow him to get to the weapon which he always carried in his automobile."
We are constrained to find the trial judge has not committed manifest error in his conclusion, although the evidence is very close and possibly could be given another construction. This is primarily a factual matter, the resolution of which is entirely dependent on the evaluation of the credibility of the witnesses testimony. With the exception of the testimony of David Ann Rowell, which was by deposition, the trial judge was privileged to see the witnesses and thereby better judge their credibility. We further observe that Mrs. Rowell, although corroborating the Wimberlys' contention that Rowell was initially the "aggressor", gave support to the trial judge's finding that the "original fracas had ended" prior to the shooting of Rowell.
The law regarding the use of excessive force in repelling a feared attack on one's person or on another whom he is obligated to defend is best stated in the case of Patterson v. Kuntz, 28 So.2d 278 (La.App. 4th Cir. 1946), as follows:
"Of course, resort to the use of a dangerous weapon in order to repel a supposed attack upon a defendant's person or that of persons to whom he owes a duty to protect cannot be countenanced as justifiable save in exceptional cases where the actor's fear of the danger is not only genuine but is founded on facts which would be likely to produce similar emotions in men of reasonable prudence."
Under the trial court's finding of fact there is no question that Wimberly used excessive force and is thus liable for committing a battery on the person of John L. Rowell.
The sole complaint advanced in brief by counsel for the appellant in the action brought by the Wimberlys against Rowell for the striking of Mrs. Wimberly is in regard to the amount awarded. The trial judge allowed Mrs. Wimberly the sum of $750 for her personal injuries. Although the injury was very slight, due to the condition of Mrs. Wimberly at the time we find no abuse in the discretion of the trial judge. The severity of the blow is disputed. However, she visited a physician's office on the night of the incident and was given medication to relieve pain and to aid in relaxation. The anxiety caused by her condition is also of some significance. Measured in the light of recent awards approved by this court for similar injuries, this amount is not excessive. See Earle v. Wilhite, 299 So.2d 393 (La.App. 2nd Cir. 1974).
For the foregoing reasons the judgments appealed from in these consolidated cases are affirmed. Costs of this appeal are to be assessed equally.